# Joseph Dilworth's Appeal.

1. In the absence of fraud, a trustee is liable with respect to trust property which he conveys to a volunteer, to the same extent as for that which he sells to a purchaser with notice of the trust; the liability is measured by the market value of the land at the date of the conveyance.

2. A. as executor, held a third mortgage against certain premises. After suit had been brought on the first mortgage, he bought both the first and second, with his own funds, and at the sale of the property purchased that also, through an agent, for himself individually. He afterwards conveyed the property to his daughter-in-law, B., as a gift, the deed reciting, however, a consideration of $5,000, which was the real value of the property at the time. B. subsequently conveyed the property to a bona fide purchaser for about $10,000. There was no evidence of fraud on A.'s part. Upon exceptions to his account as executor, the court surcharged him with the entire value received by B., and with the rents and profits of the property during the time B. held it.

   *Held,* that the surcharge should have been simply of $5,000, the value of the property when A. conveyed it to B., and interest thereon from the date of the conveyance.

[Dilworth's Appeal.]

November 10th, 1884. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

APPEAL from the Orphans' Court of *Allegheny county:* Of October and November Term, 1884, No. 189.

Appeal of Joseph Dilworth, surviving executor of William Dilworth, deceased, from a decree of said court surcharging him with the increase in value and the rents of certain property bought by said executor, individually, and conveyed by him to Mrs. Dilworth, his son's wife, from the date of said conveyance until the property was again conveyed by the latter to a third person.

The facts as found by the auditing judge were as follows: "One J. C. Bidwell, to secure the sum of $10,000 which he owed the estate of William Dilworth, deceased, gave a mortgage of that amount to the executor, Joseph Dilworth, on 19 lots owned by him at Oakland E. E., Pittsburgh, upon which there were two prior mortgages amounting to about $10,000, one held by the M. & M. Bank, and the other by Josiah King, in trust. Bidwell was at the time owner of and occupied property in the rear of this plan of lots, and had for many years had his driving road over the land in front, on which his plan was laid to the public thoroughfare. The firm of Dilworth, Porter & Co., of which Joseph Dilworth was a member, became the owners of Bidwell's homestead, and Bidwell moved to the house on his plan of lots, and closed up the way. Joseph Dilworth thereupon, with a view, as he testified, to obtain a right of way over the Bidwell plan of lots, first had proceedings instituted and then stayed on the mortgage held by him as executor, and then obtained control of the prior mortgages and thereon sold, and became the purchaser at marshal's sale, in the name of Graham Scott, at a bid of $50, of the lots in question. Bidwell having filed exceptions to the sale on the ground of inadequacy of price, an affidavit was sworn to by Joseph Dilworth setting forth, after reciting the three mortgages on the Oakland property as being owned by deponent as executor, and in his own right, that deponent has no other means of collecting his said debt than the said land. It was then agreed on Mr. Bidwell and Mr. Dilworth's behalf that the amount of the prior mortgages standing in the name of the M. & M. Bank and of Josiah King, should be considered as the amount of the bid, and satisfaction of those mortgages procured to be made by Dilworth. The sale was thereupon confirmed and the mortgages subsequently satisfied accordingly. The date of the deed to Graham Scott (for Joseph Dilworth) was July 3d, 1879, the amount paid the King mortgage and judgment thereon was (April 12th, 1879,) $3,717.10,

and the amount paid the M. & M. Bank mortgage and judgment thereon was (June 4th, 1879,) $4,688.56. These payments were paid out of Dilworth's individual funds. There was no available fund belonging to the estate with which they could have been paid. This left the whole amount of the mortgage held by the executor, ($10,000,) unpaid. Scott on November 17th, 1879, at the instance of Dilworth, conveyed three of the lots so purchased, together with two lots not embraced in the mortgage, and the house thereon, to Dilworth's daughter-in-law, Mrs. Virginia Dilworth, who made necessary repairs to the extent of $1,200, and occupied the house until November 2d, 1882, when she exchanged it for town lots on the North Pacific R. R., at a valuation of $10,000, on the advice of Joseph Dilworth. Scott conveyed the remaining lots to Joseph Dilworth, who on January 4th, 1882, conveyed them to his son, Lawrence Dilworth, at $300 each, taking his due bill therefor, which has not been paid. Lawrence Dilworth sold fourteen of these lots on September 2d, 1883, at $350, and one since, the date of which was not given, at $525. He, in fact, knew when he purchased, of the existence of the Bidwell mortgage held by his father as executor, and that his father had become the purchaser through the prior mortgage.

"The value of the five lots and house conveyed to Mrs. Dilworth, was at the time of the conveyance $5,000.

"Joseph Dilworth made repeated efforts to sell the remaining lots and offered them at $300 each to all the parties interested, except Bidwell, but was unable to dispose of them until the sale to Lawrence Dilworth. From the date of his purchase until some time after his final sale, the value of real estate at Oakland was very much depressed, and there were very few sales. The front tier of lots in the Bidwell plan was subject to a heavy street assessment, which Dilworth's grantees assumed to pay. It does not appear that Dilworth was notified by any of the parties interested that he would be held accountable as trustee for the lots purchased by him, until after the date of his conveyance to his son, Lawrence Dilworth. Mr. Dilworth was of opinion at the date of the marshal's sale, that the lots purchased by him were worth more than the amount of the first two mortgages fixed as the amount of the purchase money."

Upon this statement of facts, and upon exceptions filed to the account of Joseph Dilworth as executor, the court entered a decree surcharging the accountant with the amount received by Mrs. Dilworth for the house and lots conveyed to her by accountant, in her exchange of the same, to wit, $10,000 and interest thereon from November 22d, 1882; and also with the rent of said house and lots from November 17th, 1879, the

date of the conveyance to Mrs. Dilworth, to wit, $1,808.33, and credited him with the amount of the first and second mortgages on said property.

Exceptions filed to this decree by Joseph Dilworth, were dismissed by the court, whereupon he took this appeal assigning for error the decree of the court.

*Negley* (with whom were *Bruce, Shields* and *Wiley*), for the appellant.—Joseph Dilworth's only interest as executor, in the property was in the surplus of the proceeds after the payment of prior liens. The sale was not made by him, and he was not, therefore, a trustee buying at his own sale and could lawfully purchase the property: Fisk *v.* Sarber, 6 W. & S. 18; Frank's Appeal, 59 Pa. St. 190; Cadbury *v.* Duval, 10 Pa. St. 265; Armor *v.* Cochrane, 66 Pa. St. 311; Chorpenning's Appeal, 32 Pa. St. 315. But even if he took the property subject to a trust, in the absence of fraud or bad faith, he was only liable for what he received: Greenwood's Appeal, 92 Pa. St. 181. He committed no fraud in giving the property to Mrs. Dilworth and he was liable to account to the heirs simply for the value of the same at the time of the gift with interest; this value is shown by the testimony to have been $5,000.

*S. A. McClung* and *Reed* (with whom was *Knox*), for appellees.—A trustee or executor will not be permitted to create in himself an interest opposite to that of the party for whom he acts, nor to traffic in the estate for his own emolument: Fawcett *v.* Faucett, Zinn's Leading Cases, 177. The rule applies to all sales judicial as well as others: Campbell *v.* Pa. Life Ins. Co., 2 Wharton 54. A trustee holding a second mortgage cannot buy for himself at a sale on the first mortgage: Van Epps *v.* Van Epps, 9 Paige's Chancery, 241; Longest *v.* Tyler, 1 Duvall 192. Mrs. Lawrence Dilworth, being a volunteer, took the property encumbered with the trust and the *cestuis que trustent* could have recovered it from her and compelled its sale for the benefit of the trust. The fact that she sold it to an innocent purchaser does not compel them to go back and value it as of the date at which the trustee gave it to her.

Mr. Justice TRUNKEY delivered the opinion of the court January 5th, 1885.

This appeal and the appeals by Sarah S. Bidwell and W. P. Dilworth, executor, are from the same decree, and were heard together. Of the questions raised by the numerous assignments of error we discover but one that need be re-

marked, namely, is the executor of William Dilworth, deceased, liable to account for the increase in value and the rents of the land he conveyed to Mrs. Dilworth, from the date of said conveyance until she conveyed it to Rev. Reid? All other questions were well considered.

The marshal's deed for the land purchased by the executor, was acknowledged on July 19th, 1879, and on November 17th, in the same year, Mrs. Dilworth received her deed. In making the purchase the executor paid over $8,000, his own money, to satisfy prior liens—there was no available fund belonging to the estate with which he could have purchased. "The value of the five lots and house conveyed to Mrs. Dilworth, was at the time of the conveyance $5,000." It is not found by the Orphans' Court that the executor, in any particular, acted recklessly, or in bad faith; nor is there evidence of actual fraud.

When the land was conveyed to Mrs. Dilworth the power of the executor to control it ceased. Thereafter he had no potential control before it passed into the hands of a bona fide purchaser for value. As respects the executor she owned it and had as good right to sell and convey as if she had been such purchaser. True, it was not a sale. It was an executed gift, and could only be avoided at the election of the legatees. They could avoid a sale and conveyance to a purchaser for value, if he had notice of the trust, as well as a conveyance to a volunteer; in either case they could, if they so elected, recover the land. And in either case, after the land has come into the hands of an innocent purchaser, they may compel the executor to account for all the profit which has been made by him, with interest on said profit. This rule was applied to the proceeds of the land which the executor sold to Lawrence Dilworth. Had the executor recklessly, or in bad faith, sold the land to him for less than its market value, he would be liable to account on the basis of that value instead of the purchase money. In case of fraud in fact he might, also, be held to account for the increased value of the land after it passed into the hands of his vendee. It was the duty of the executor to make a bona fide sale of the land for its value in the interest of the legatees. He was not bound to hold it for higher price. Uninformed of the legal rule applicable to the facts he believed he held the land in his own right, and disposed of it accordingly. He conveyed a part to his daughter for the expressed consideration of $5,000, and that sum was its value. He was able to give it without hurt to anybody, and he did no more wrong in so conveying than if she had paid him the money. Thenceforth the rise in value and use

belonged to her.    Her title was not void, none could avoid it except the legatees.

There is no occasion to inquire whether the legatees might have compelled the trustee to purchase other lands of equal value, for they have elected to take the proceeds of the sale with interest.    Where the trustee, having mistaken his right, at a proper time, conveyed the land ostensibly for its value, why should he be held liable for a larger sum ?    Is he deserving of punishment as one guilty of negligence or turpitude ? Mrs. Dilworth's sale put it out of the power of the *cestuis que trustent* to recover the land itself.    They compel the trustee to account for his profit.    In absence of actual fraud, he is liable with respect to the land he conveyed to a volunteer to the same extent as for that he sold to a purchaser with notice of the trust.    The liability is measured by the market value, at the date of the conveyance.

We are of opinion that it was error to surcharge the executor with the amount paid to Mrs. Dilworth by Rev. Reid and interest thereon from November 22d, 1882, and with rent on the house and lots conveyed to Mrs. Dilworth after November 17th, 1879.    Instead, the surcharge should be $5,000 with interest from November 17th, 1879.

Decree reversed, at the costs of the appellees, and record remitted for further proceeding.